UNITED STATES of America,
Plaintiff–Appellee,

v.

William ESCH, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Linda ESCH, Defendant–Appellant.

Nos. 86–2070, 86–2090.

United States Court of Appeals,
Tenth Circuit.

Oct. 29, 1987.

Rehearing Denied in No. 86–2070
Jan. 4, 1988.

Thomas M. O'Rourke, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., with him, on brief), for plaintiff-appellee.

Richard N. Stuckey, Denver, Colo., for defendant-appellant William Esch.

Cheryl E. Peake, Denver, Colo., for defendant-appellant Linda Esch.

Before SEYMOUR, SETH and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

A jury found defendants-appellants William Esch and Linda Esch guilty of sixteen counts of sexual exploitation of children, in violation of 18 U.S.C. § 2251(a). The court sentenced both defendants to concurrent ten-year terms of imprisonment on eight of the counts, to be followed by concurrent five-year terms of probation on the remaining counts. On appeal, the defendants contend that: 1) the trial court erred in excluding expert testimony; 2) the trial court improperly admitted irrelevant and unduly prejudicial evidence; 3) 18 U.S.C. § 2251(a) is unconstitutional because it lacks a *mens rea* requirement; 4) the trial court improperly admitted co-conspirator statements; 5) the trial court erred in denying a motion for severance; 6) the government agents' conduct of the undercover operation was so outrageous as to violate due process; 7) the government agents "manufactured" federal jurisdiction; 8) no federal jurisdiction existed as to the fourteen counts involving photographs which were not mailed; 9) the evidence of the defendants' knowledge that those photographs would be mailed was insufficient to transform the transaction into a crime against the United States; and 10) the indictment was multiplicitous. We affirm.

In the spring of 1985, the United States Postal Inspection Service commenced an undercover operation which targeted suspected pedophiles.[1] Postal Inspector Patrick J. Carr, a prohibited mail specialist, established a post office box in Loveland,

---

1. Pedophilia is defined as a "paraphilia in which children are the preferred sexual object." Webster's Third New International Dictionary 1665 (1981). Paraphilia is defined as "a preference for or addiction to unusual sexual practices." *Id.* at 1638.

Colorado for a fictitious organization known as "Love Land." A membership application was sent to Thomas Blackledge, who was jointly tried with the defendants. Blackledge was a suspected pedophile whose psuedonym, Kalium Ghatt, had been discovered during an investigation in Cleveland, Ohio.

Blackledge returned the membership application in August of 1985. His answers to the enclosed questionnaire were interpreted by Carr to indicate an interest in pedophilia. Once Blackledge became a member of "Love Land," he received newsletters and responded to classified advertisements. Carr, who assumed the identity of one of the advertisers, corresponded with him over a four-month period. In two letters sent in October of 1985, Blackledge wrote about his sexual experiences with a husband and wife, later identified as defendants, and their two children. He indicated that they would be interested in producing photographs or films because they needed money.

On December 7, 1985, Carr and Blackledge met at a motel in Evans, Colorado. During the course of the conversation, which Carr recorded, they discussed taking photographs as well as making a movie or a videotape. At that time, Blackledge mentioned a family with children ages two and three. Carr in turn expressed an interest in buying photographs and suggested that Blackledge purchase a camera to take the pictures.

Blackledge also corresponded with Postal Inspector William B. Reeves, Jr. of Walnut Creek, California. At Carr's request, Reeves, also a prohibited mail specialist, assumed the identity of an advertiser in the "Love Land" newsletter. In one of his letters to Reeves, Blackledge mentioned a couple who were interested in making some photographs and videos. Reeves responded by suggesting that they swap photographs or videotapes. In February of 1986, Reeves received in the mail from Blackledge two sexually explicit photo-

graphs depicting Blackledge, the defendants and their two children.

On March 11, 1986, Blackledge and Carr met again. Blackledge showed Carr a number of sexually explicit photographs depicting himself, the defendants and their children. Carr then purchased fourteen of the photographs. Those photographs, along with the two photographs mailed by Blackledge to California, were the basis of the sixteen counts upon which the defendants were convicted.

On March 14, 1985, Carr arrested Blackledge and seized an address book which contained the names of the defendants. Five days later, postal inspectors searched the defendants' home in Loveland, Colorado. They seized a lamp, a bedspread and a clock radio, all of which corresponded to those shown in the photographs which Blackledge had delivered to Carr and had mailed to Reeves. The postal inspectors also seized a Polaroid camera and a number of so-called "swingers" magazines.

## I.

Defendant Linda Esch first contends that the trial court erred in excluding the testimony of her expert witness, a clinical psychologist. She argues that the testimony was admissible to show motive as well as to show her particular psychological characteristics.

Prior to trial, the government filed a motion in limine to prevent any testimony concerning defendant's mental state. The trial court granted the motion, stating that unless there was an issue of competency or insanity, it would not permit expert testimony on a factual issue within the competence of the jury. Rec. vol. VI at 199. At a hearing on defendant's offer of proof, the psychologist testified that the defendant had a "dependent personality," and further testified that defendant's values regarding sexuality and nudity were derived from her "rigid" childhood experiences. Citing Fed. R.Evid. 704(b),[2] the court refused to allow

---

**2.** Fed.R.Evid. 704(b) provides:

No expert witness testifying with respect to the mental state or condition of a defendant

in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition

the psychologist to testify before the jury, again stating that the issue of intent was a matter of fact for the jury. The court also cited Fed.R.Evid. 702 [3] in concluding that, because there had been no indication of neurosis or mental defect, the expert testimony was unnecessary. Rec. vol. XI at 946–47.

The determination of whether expert testimony should be admitted rests within the sound discretion of the trial court. *United States v. Barton,* 731 F.2d 669, 672 (10th Cir.1984). The court's ruling will not be disturbed absent a clear abuse of that discretion. *Id.*

■ It is not entirely clear whether the testimony was proffered to address defendant's contention that she was duped by Blackledge, or to elucidate her "motive" for producing the photographs, or both. In any event, we agree with the trial court that the testimony essentially addressed the issue of intent. An expert may not substitute her judgment as to the defendant's state of mind by testifying that because of the defendant's personality, she would not have acted in a particular manner. *United States v. Pino,* 606 F.2d 908, 918 (10th Cir.1979). Absent the suggestion of the presence of a mental disease or defect, a trial court may properly exclude psychiatric testimony which merely offers an opinion about the defendant's capacity to form the mental state required to commit the offense charged. *United States v. McBride,* 786 F.2d 45, 50 (2d Cir.1986).

■ Even assuming that the psychologist would not have focused solely on defendant's capacity to form the requisite intent, more generalized testimony regarding her personality characteristics was excludable because it addressed a subject matter within the knowledge and experience of the jury and therefore did not meet the helpfulness criterion of Fed.R.Evid. 702. *See United States v. Affleck,* 776

F.2d 1451, 1458 (10th Cir.1985); *United States v. Kepreos,* 759 F.2d 961, 964–65 (1st Cir.), *cert. denied,* 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985). Defendant testified about her upbringing and her attitudes toward sexuality and nudity. She further testified that she did not believe she was producing sexually explicit pictures and that she had been duped by Blackledge. The jury was capable of making an intelligent evaluation of that testimony without the assistance of an expert. The trial court was within its discretion in excluding the psychologist's testimony.

## II.

■ Defendant Linda Esch claims the trial court improperly admitted certain evidence which had been seized from her home. The seized items included "swingers" magazines as well as advertisements and photographs mailed to such magazines by the defendants. Defendant argues that because the evidence pertained solely to adult sexual practices, it was not relevant to the charge of sexual exploitation of children and should have been excluded due to its prejudicial nature.

The determination of whether evidence is relevant lies within the sound discretion of the trial court, and the court's determination will not be disturbed absent a clear showing of an abuse of that discretion. *United States v. Neal,* 718 F.2d 1505, 1509–10 (10th Cir.1983), *cert. denied,* 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed.2d 34 (1984). A trial court also has broad discretion to determine whether otherwise relevant evidence should be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Id.* at 1510; *see* Fed.R.Evid. 403.

Evidence of other acts is not admissible solely to prove a defendant's criminal disposition. *United States v. Naranjo,* 710

constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

3. Fed.R.Evid. 702 provides:
 If scientific, technical, or other specialized knowledge will assist the trier of fact to un-

derstand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

F.2d 1465, 1467 (10th Cir.1983). Such evidence, however, may be admissible under Fed.R.Evid. 404(b) [4] to show knowledge, motive or intent on the part of the actor. *United States v. Cummings*, 798 F.2d 413, 417 (10th Cir.1986).

The magazines, advertisements and photographs were relevant, as they tended to show that defendant had previously sent sexually explicit materials through the mail and that she knew or had reason to know that the photographs at issue would be mailed. The exhibits also tended to rebut her contention that she had been duped by Blackledge. *See United States v. Garot*, 801 F.2d 1241, 1247 (10th Cir.1986) (evidence of other mailings of child pornography relevant to show knowledge, *scienter* and absence of mistake). In specifically articulating the purposes for which the evidence was admitted, *United States v. Morales–Quinones*, 812 F.2d 604, 612 (10th Cir.1987), the trial court stated that the evidence rebutted the defense that the defendants did not engage in photographing sexual behavior prior to meeting Blackledge, that it showed knowledge of the mailing of such materials and that it indicated "past practices and customs." Rec. vol. VII at 243; rec. vol. IX at 549, 614. A limiting instruction was given to the effect that possession of the materials was not unlawful. The court did not abuse its discretion in admitting the controverted evidence.

### III.

■ With regard to the two counts involving the photographs mailed to the postal inspector in California, defendant Linda Esch asserts that 18 U.S.C. § 2251(a) is unconstitutional because it is a strict liability statute lacking a requirement of proof of criminal intent.

---

**4.** Fed.R.Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

As amended by the Child Protection Act of 1984, 18 U.S.C. § 2251(a) provides:

Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, any sexually explicit conduct *for the purpose of producing any visual depiction of such conduct,* shall be punished as provided under subsection (c), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed. (emphasis added).

The statute proscribes the employment or use of a minor to engage in sexually explicit conduct "for the purpose of producing" a visual depiction of such conduct. "In a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent." *United States v. Bailey*, 444 U.S. 394, 405, 100 S.Ct. 624, 632, 62 L.Ed.2d 575 (1980). Thus the statute, by requiring proof of purposeful conduct, clearly contains a scienter requirement.[5] The fact that the statute does not specifically require intent regarding the mailing element does not render the statute unconstitutional. *See United States v. Yermian*, 468 U.S. 63, 68, 104 S.Ct. 2936, 2939, 82 L.Ed.2d 53 (1984) (jurisdictional language need not contain same culpability requirement as other elements of offense).

### IV.

■ Defendant Linda Esch contends that the trial court erroneously ruled that a conspiracy existed and, as a result, improperly admitted Blackledge's hearsay state-

---

**5.** Similar attacks on the constitutionality of the statute, on the basis that it imposes strict liability, have been rejected. *See United ,States v. Fenton*, 654 F.Supp. 379, 380 (E.D.Pa.1987); *United States v. Reedy*, 632 F.Supp. 1415, 1422 (W.D.Okla.1986).

ments against her. Specifically, she argues that there was a total lack of independent evidence indicating that she conspired to mail sexually explicit photographs.

Hearsay statements of a co-conspirator are properly admitted pursuant to Fed.R. Evid. 801(d)(2)(E) [6] if the trial court makes a factual determination that the government has established, by a preponderance of the evidence, that: 1) a conspiracy existed; 2) the declarant and the defendant were members of the conspiracy; and 3) the hearsay statements were made in the course and in furtherance of the conspiracy. *United States v. Hernandez*, 829 F.2d 988, 993 (10th Cir.1987). The court may consider the hearsay statements sought to be admitted, along with evidence independent of the statements, in determining whether a conspiracy existed. *Bourjaily v. United States*, — U.S. —, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987); *United States v. Hernandez*, 829 F.2d at 993.

Prior to the trial court's ruling on the existence of a conspiracy, numerous hearsay statements contained in the letters sent to the postal inspectors and in the tape recordings of the meetings with Carr were admitted solely against Blackledge. On the fourth day of trial, the court conducted a hearing to determine whether that evidence also could be admitted against defendants. In determining that a conspiracy, or what it termed a "joint venture," did exist, the court relied on the following evidence: the photographs, which depicted Blackledge, the defendants and the defendants' children; Blackledge's address book containing the defendants' names; the defendants' shared interest in "swingers" magazines and in the mailing of sexually explicit photographs; the advertisements placed in the "swingers" magazines, which indicated an apparent interest by William Esch in young girls; the longstanding nature of the defendants' relationship with Blackledge; and telephone records indicating communication between the defendants and Blackledge at pertinent times. Rec. vol. X at 755–60.

The independent evidence upon which the court relied, particularly the photographs, supports its determination. Contrary to defendant's contention, that evidence supported a reasonable inference that the photographs were produced with the knowledge that they would be mailed. The court's finding that a "joint venture" existed is further buttressed by the hearsay statements themselves, which could have been considered along with the independent evidence. *United States v. Bourjaily*, 107 S.Ct. at 2782; *United States v. Hernandez*, 829 F.2d at 993. There was no error in the admission of the co-conspirator hearsay statements.

## V.

Defendant Linda Esch claims that the trial court erred in denying her motion for severance. She argues that her defenses were clearly antagonistic to Blackledge's and that she should not have been tried with her husband.

The decision whether to grant a severance is within the sound discretion of the trial court, and its decision will not be reversed in the absence of a strong showing of prejudice. *United States v. Heath*, 580 F.2d 1011, 1022 (10th Cir.1978), *cert. denied*, 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979). The court must weigh any potential prejudice against the important considerations of economy and expedition in judicial administration. *United States v. Petersen*, 611 F.2d 1313, 1331 (10th Cir.1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980).

Joinder of the defendants was proper. Under Fed.R.Crim.P. 8(b),[7] defendants

---

**6.** Fed.R.Evid. 801 provides in pertinent part:
 **(d) Statements which are not hearsay.** A statement is not hearsay if—

 . . . . .

 **(2) Admission by party-opponent.** The statement is offered against a party and is

 . . . . .

 (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

**7.** Fed.R.Crim.P. 8(b) provides:
 **Joinder of Defendants.** Two or more defendants may be charged in the same indictment or information if they are alleged to have

may be charged in the same indictment if they are alleged to have participated in the same series of acts or transactions. Eighteen of the nineteen counts in the original indictment named all three defendants, with each count alleging the use of the children to produce a specific photograph. The remaining count charged Blackledge with mailing the photographs mentioned in counts II and III. According to the indictment, the offenses occurred on or about February 12, 1986 or March 11, 1986. Where the evidence overlaps, the offenses are similar and the operable events occurred within a relatively short span of time, joinder of defendants and offenses is proper. *United States v. Riebold,* 557 F.2d 697, 707 (10th Cir.), *cert. denied,* 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977).

 In attempting to demonstrate prejudice, defendant first argues that her defenses were antagonistic to Blackledge's. Severance is not required where co-defendants rely on different defenses unless the defenses are so antagonistic that they are mutually exclusive. *United States v. Burrell,* 720 F.2d 1488, 1492 (10th Cir.1983). The conflict between co-defendant defenses must be so intense that there is a danger the jury will unjustifiably infer from the conflict alone that both defendants are guilty. *United States v. Swingler,* 758 F.2d 477, 495 (10th Cir.1985). Blackledge's defenses were entrapment and outrageous government conduct, a claim requiring a legal ruling by the trial court, while defendant essentially asserted that she had been duped and that she lacked the requisite intent. Those defenses were not so antagonistic as to compel severance. *See United States v. Burrell,* 720 F.2d at 1492–93.

 Second, defendant claims that the marital privilege was violated by the joint trial with her husband. We fail to discern from the record in what regard the marital privilege was implicated. Defendant's generalized equal protection argument, in sup-

port of which she cites no authority, is unavailing. The trial court did not abuse its discretion in denying defendant's motion for severance.

## VI.

 Both defendants claim that the postal inspectors' conduct in carrying out the undercover operation was so outrageous that their convictions should be reversed on due process grounds. They argue that the operation directly harmed their children, since there was no evidence to indicate the existence of any photographs prior to the government agents urging Blackledge to take such photographs. They also argue that the operation potentially harmed other unknown children, due to the encouraging of pedophilia through the forwarding of mail generated by the "Love Land" newsletter.

"The outrageous governmental conduct defense is manifestly reserved for only 'the most intolerable government conduct.'" *United States v. Warren,* 747 F.2d 1339, 1341–42 (10th Cir.1984) (citing *United States v. Jannotti,* 673 F.2d 578, 608 (3d Cir.1982)). A defendant may not invoke the due process clause unless the acts of the government agents, "no matter how outrageous, had a role in inducing the defendant to become involved in the crime." *United States v. Gamble,* 737 F.2d 853, 858 (10th Cir.1984).

We hold that the undercover operation did not constitute intolerable governmental conduct. The postal inspectors had knowledge, gleaned from a previous investigation, that Blackledge was a suspected pedophile. The agents did not introduce Blackledge to the defendants and did not provide any of the instrumentalities of the crime. Nor did the agents induce the defendants to engage in any activity that they were not otherwise disposed to undertake. While it is true that Carr encouraged Blackledge to take photographs, and that other mail was forwarded during the

participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more

counts together or separately and all of the defendants need not be charged in each count.

course of the "Love Land" operation, the postal inspectors' conduct was not outrageous in light of the clandestine nature of the activity that they were investigating. To the contrary, we agree with the trial court's observation that it was reasonable for the postal inspectors to assume that the only way they could ferret out suspected pedophiles "was to encourage the photograph[ing] and mailing of what was otherwise being done or what they thought was being done." Rec. vol. XII at 1138–39.

In *United States v. Thoma*, 726 F.2d 1191 (7th Cir.), *cert. denied*, 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984), a panel of the Seventh Circuit addressed a claim of outrageous government conduct involving a similar undercover operation set up to investigate prohibited mailings of child pornography. The defendant responded to a survey sent by the government agents, and eventually mailed videotapes of children engaged in sexually explicit conduct. The court concluded that the sting operation "was nothing more than an undercover operation of an inherently clandestine activity and *did not constitute Government misconduct, much less violate defendant's right to due process.*" *Id.* at 1199 (emphasis added).

By way of dicta, the court stated that because the defendant did not photograph any minors engaged in sexual activity, but only videotaped photographs from several publications, "we decline to speculate about the possibility of indirect harm to minors in other investigations." *Id.* The defendants cite that language in arguing that in this case the harm to children envisioned in *Thoma* was present and warranted the dismissal of the indictment. Their argument is unpersuasive, for the evidence indicates that the defendants were predisposed to engage in sexual activity with their children and were willing to photograph such activity. The contention that other unknown minors were harmed is speculative at best. Defendants' allegations of harm to minors resulting from the undercover operation do not substantiate their otherwise meritless claim of outrageous government conduct.

## VII.

Defendant Linda Esch contends that the government agents "manufactured" federal jurisdiction. Relying on *United States v. Archer*, 486 F.2d 670 (2d Cir.1973), she argues that the agents provided the interstate elements which confer federal jurisdiction.

In *Archer*, the Second Circuit reversed several Travel Act convictions, holding that Congress did not intend to grant federal jurisdiction over cases "where the federal officers themselves supplied the interstate element and acted to ensure that an interstate element would be present." *United States v. Archer, id.* at 682. This circuit has expressly limited the applicability of *Archer* to cases of virtual entrapment. *United States v. O'Connor*, 635 F.2d 814, 817 (10th Cir.1980); *United States v. Hall*, 536 F.2d 313, 327 (10th Cir.), *cert. denied*, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976).

This is not a case of virtual entrapment. Although the creation of the undercover operation by the postal inspectors undeniably provided a conduit for interstate activity, the government agents did not provoke any activity that the defendants were not predisposed to undertake. As indicated, Blackledge consistently expressed a willingness to correspond through interstate mailings and to send sexually explicit photographs through the mail. Further, the defendants' production of the sexually explicit photographs, with the knowledge that the photographs would be mailed, constituted activity which represented an integral, rather than an incidental or unforeseen, aspect of the criminal transaction. *United States v. O'Connor*, 635 F.2d at 818.

Defendant also contends that Carr enlisted the help of Inspector Reeves in California for the purpose of supplying the interstate element of the crimes. As Carr testified, he requested Reeves' assistance because Reeves was a prohibited mail specialist familiar with pedophiles. Reeves testified that pedophiles often do not correspond with persons in close proximity for

fear of being identified. The agents, by working in concert during the course of the investigation, did not thereby act "to ensure that an interstate element would be present." *United States v. Archer,* 486 F.2d at 682.

## VIII.

Defendant William Esch contends that the knowledge element in 18 U.S.C. § 2251(a) is insufficient to create federal jurisdiction because an actual mailing is not required for a conviction. While conceding that a mailing clearly provides a satisfactory federal nexus, he argues that allowing a "state of mind" to provide the jurisdictional element of the crime significantly alters federal-state relationships.

 Congress has the inherent power to prohibit criminal activity under the Commerce Clause even though the effect of such activity on interstate commerce may be *de minimis. See Perez v. United States,* 402 U.S. 146, 150–51, 91 S.Ct. 1357, 1359–60, 28 L.Ed.2d 686 (1971); *United States v. Schwanke,* 598 F.2d 575, 578 (10th Cir.1979). Given Congress' inherent power to prohibit actions that interfere with federal interests,[8] we construe defendant's argument to be that without an actual mailing, the government cannot establish the jurisdictional element of 18 U.S.C. § 2251(a) by merely showing that he knew or had reason to know that the photographs would be mailed. We cannot agree.

The statute provides in part that any person who uses a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct "shall be punished ... if such person knows or has reason to know that such visual depiction will be ... mailed." 18 U.S.C. § 2251(a). The knowledge element does not relate to mere "subjective knowledge," as characterized by defendant, but rather addresses intentional conduct.

" '[K]nowledge' corresponds loosely with the concept of general intent." *United States v. Bailey,* 444 U.S. at 405, 100 S.Ct. at 632. Accordingly, the government must prove the existence of such intentional conduct and not merely the existence of "subjective knowledge."

Federal courts have refused to base federal jurisdiction upon "unforeseen interstate activity." *United States v. O'Connor,* 635 F.2d at 818. Here, there was sufficient evidence adduced to prove that a mailing was foreseeable. In that regard, the statute under which the defendants were convicted is analogous to the mail fraud statute, which has been interpreted to mean that a defendant causes a mailing when it is reasonably foreseeable that his activities will result in the use of the mail. *United States v. Roylance,* 690 F.2d 164, 167 (10th Cir.1982). "All that is necessary to establish a mailing under 18 U.S.C. § 1341 is a showing that the defendant acted 'with knowledge that the use of the mails [would] follow in the ordinary course of business, or where such use [could] reasonably be foreseen, even though not actually intended....' " *Bank of America Nat'l Trust & Savings Ass'n v. Touche Ross & Co.,* 782 F.2d 966, 971 (11th Cir. 1986) (quoting *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954)).

██ Finally, we cannot agree with defendant's contention that the statute upsets federal-state relationships by exerting federal jurisdiction over an area traditionally left to the states. Defendant cites this court's statement in *O'Connor* that "in grounding federal criminal jurisdiction on an interstate nexus we must avoid 'alter[ing] sensitive federal-state relationships' through usurpation of state control over local matters." *United States v. O'Connor,* 635 F.2d at 818 (citing *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971)). Con-

---

**8.** A jurisdictional requirement "is sufficient to confer jurisdiction on the federal courts for what otherwise are state crimes precisely because it implicates factors that are an appropriate subject for federal concern." *United States v. Feola,* 420 U.S. 671, 676 n. 9, 95 S.Ct. 1255, 1260 n. 9, 43 L.Ed.2d 541 (1975). "Congress has the inherent power to establish criminal penalties for actions that interfere with any federal interest." 1 R. Rotunda, J. Nowak & J. Young, Treatise on Constitutional Law § 4.10 (1986).

gress was aware of that potentiality in passing the Protection of Children Against Sexual Exploitation Act of 1977. The legislative history of the Act indicates that while Congress recognized that a "delicate balance" must be maintained between federal and state law enforcement efforts, it deemed that "the use of children in the production of pornographic materials is a matter that cannot be adequately controlled by state and local authorities." S.Rep. No. 95–438, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 40, 48.

### IX.

In a related argument, defendant William Esch contends that the evidence of his knowledge that the fourteen photographs sold by Blackledge would be mailed was insufficient to transform the transaction into a crime against the United States. He relies on *Archer* in asserting that such a "casual" interstate contact cannot create a federal offense and that the "speculative" nature of the inference that he knew or had reason to know that the photographs would be mailed was not sufficient to create a federal crime.

As discussed above, the knowledge element of the statute clearly provides a federal jurisdictional basis. Despite defendant's argument that the evidence showed only one fact, that Blackledge insisted that the photographs he sold to Carr not be mailed, there was sufficient evidence adduced at trial to prove that a mailing of those photographs was foreseeable. For instance, two of the photographs produced by the defendants were actually mailed, supporting a reasonable inference that defendant knew or had reason to know that the fourteen photographs sold by Blackledge to the postal inspector also would be mailed. Additional evidence indicated that defendant had previously used the mail to send sexually explicit photographs, albeit depicting adult sexual activity. Viewed in the light most favorable to the government, *United States v. Alonso*, 790 F.2d 1489, 1492 (10th Cir.1986), there is sufficient evidence to support the convictions.

### X.

The final issue to be addressed is defendant Linda Esch's contention that the indictment was multiplicitous. She argues that the photographs depicted the same two children and were produced in the same photographing session and therefore constitute only one crime.

"Multiplicity is the charging of a single offense in more than one count." *United States v. De La Torre*, 634 F.2d 792, 794 (5th Cir.1981). This is not an instance where the same act or transaction constitutes a violation of two distinct statutory provisions. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Rather, it is a case where each successive act has been charged as a separate crime under the same statute. The pertinent inquiry becomes defining the correct unit of prosecution. *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

18 U.S.C. § 2251(a) proscribes the use of a minor to engage in "any sexually explicit conduct for the purpose of producing *any visual depiction* of such conduct." (emphasis added). As we construe the statute, each use of a minor to create a visual depiction constitutes a separate and distinct violation, and thus represents the correct unit of prosecution.

The inquiry as to what constitutes the correct unit of prosecution focuses in part on the identification of the key element of the federal offense. In *United States v. Villano*, 529 F.2d 1046 (10th Cir.), *cert. denied*, 426 U.S. 953, 96 S.Ct. 3180, 49 L.Ed.2d 1193 (1976), the defendants, who were charged with three counts of using the telephone to promote gambling, claimed that, because their activities were continuous, the government had acted arbitrarily in charging separate offenses. This court concluded that the charging of separate offenses was warranted because while the continuing " 'unlawful activity' " was part of the required elements, "the key element for the federal offense is the act of travel or use of interstate facilities." *Id.* at 1061.

Here, we conclude that the key element of the offense is the use a minor to engage in sexually explicit conduct for the purpose of creating a visual depiction of such conduct.[9] That conclusion is supported by the legislative history of the statute, which indicates that Congress intended to protect children from the abuse inherent in the production of pornographic materials. S.Rep. No. 95–438, *reprinted in* 1978 U.S. Code Cong. & Admin.News at 53.[10] The fact that multiple photographs may have been sequentially produced during a single photographing session is irrelevant. Each photograph depended upon a separate and distinct use of the children. *See Blockburger v. United States*, 284 U.S. at 302–03, 52 S.Ct. at 181; *United States v. Williams*, 685 F.2d 319, 321 (9th Cir.1982).

Defendant's reliance on *United States v. Meyer*, 602 F.Supp. 1480 (S.D.Cal.1985), is unavailing. In *Meyer*, the defendant was charged under 18 U.S.C. §§ 2252(a)(1) and 545 in connection with entering the United States with a binder containing pornographic pictures of young males. Each count of the indictment related to the transportation of one photograph contained in the binder. The court agreed with the defendant's contention that the indictment was multiplicitous, deeming it dispositive "that the pictures were transported and imported simultaneously." *Id.* at 1482.

The court noted, however, that "this case is distinguishable from those cases in which the criminal acts listed in each count were not simultaneous." *Id.* (citations omitted).

The criminal acts in the instant case were not simultaneous. Again, our conclusion that the correct unit of prosecution is each use of the children to create a visual depiction is supported by the legislative history, which indicates an unequivocal intent to protect children from the abuse inherent in the production of sexually explicit materials. As explained by the Supreme Court, materials depicting sexual activity by juveniles "are a permanent record of the children's participation." *New York v. Ferber*, 458 U.S. 747, 759, 102 S.Ct. 3348, 3355, 73 L.Ed.2d 1113 (1982). The indictment properly charged separate counts for each of the photographs produced.

AFFIRMED.

---

9. In other cases the courts have focused on the key element of the offense in determining the correct unit of prosecution. In *Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915), the defendant, who cut open a number of mail bags, was charged with a separate count for each mail bag. The Supreme Court concluded that "[a]lthough the transaction of cutting the mail bags was in a sense continuous, the complete statutory offense was committed every time a mail bag was cut...." *Id.* at 629, 35 S.Ct. at 711.

In *United States v. Marzano*, 537 F.2d 257 (7th Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977), the defendant broke into a security company vault and took money belonging to six different banks. The Seventh Circuit rejected the defendant's claim that it was improper to charge him with separate violations of 18 U.S.C. § 2113(b), finding the fact that all the money was taken from the same vault irrelevant because "Congress was concerned with protecting bank money." *Id.* at 273.

In *Barringer v. United States*, 399 F.2d 557 (D.C.Cir.1968), *cert. denied*, 393 U.S. 1057, 89 S.Ct. 697, 21 L.Ed.2d 698 (1969) (per curiam), the defendant robbed two individuals in a grocery store and was convicted on two separate counts. The District of Columbia Court of Appeals rejected the defendant's claim that the rule of lenity necessitated the invalidation of the consecutive sentences imposed, because there was "no doubt that the robbery statute was designed to safeguard individual citizens from being robbed." *Id.* at 558.

10. As explained in the Senate report,

Current Federal laws dealing with pornography focus almost exclusively on the sale, distribution and importation of obscene materials, and, do not directly address the abuse of children inherent in their participation in the production of such materials ... the Committee intends to fill the existing gap in Federal law by declaring that the use of children in the production of such materials is a form of child abuse. S.Rep. No. 95–438, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 53.