9 F.3d 118
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES OF AMERICA, Plaintiff-Appellee, Cross-Appellant,
v.
Sharon Denise MOORE, a/k/a "Mousey", Defendant-Appellant,
Cross-Appellee.
 Nos. 92-1128, 92-1154.
 United States Court of Appeals, Tenth Circuit.
 Oct. 25, 1993.
 
 ORDER AND JUDGMENT[1]
 Before EBEL, KELLY, and VRATIL, Circuit Judges.[2]
 
 
 1
 On September 13, 1991, the defendant, Sharon Denise Moore, was indicted along with twenty-one co-defendants on various drug related offenses. The defendant was tried jointly with one of the co-defendants, Thomas Rackstraw, and found guilty of conspiracy to distribute over 50 grams of cocaine base in violation of 21 U.S.C. 841(a)(1)(b)(1), (A)(iii), and 846, and possession with intent to distribute over 5 grams of cocaine base in violation of 21 U.S.C. 841(a)(1) and (b)(1)(B)(iii). The defendant has filed a direct appeal claiming several errors at trial. The United States has filed a cross appeal asserting that the district court incorrectly applied the Sentencing Guidelines. We conclude that there was sufficient evidence to support the defendant's conviction and that the district court did not err in its evidentiary decisions, its refusal to sever Moore's trial, or its application of the Sentencing Guidelines. Accordingly, we affirm.
 
 I. Facts
 
 2
 Malcolm Green was one of the leaders of a drug conspiracy that transported crack cocaine from Southern California to Denver, Colorado beginning in about 1987. The defendant first met Green in the summer of 1990, and Green attempted to date the defendant. Several days later, the defendant went to Green's apartment. Eddie Williams, another member of the drug conspiracy, was at the apartment and asked the defendant if she was "working," that is, if she was selling drugs. The defendant replied that she was. Williams discussed prices with the defendant in an attempt to become her supplier. However, the defendant declined Williams' offer, explaining that she did not need any drugs at that time.
 
 
 3
 The next night, the defendant joined Green at a home in Aurora, Colorado, where Green was selling drugs. After the defendant arrived, she received a page on her beeper. She informed Green that she had identified a buyer for crack cocaine and that she needed Green to supply the drugs. Green and the defendant drove a short distance from the house. While Green waited in the car, the defendant sold an ounce of crack cocaine that Green had supplied. Green received the proceeds from the sale.
 
 
 4
 Over the course of the next week, Green "fronted" the defendant between five and six ounces of crack. According to this arrangement, Green would give crack to the defendant and accept payment at a later time, once the defendant had resold it. On the night of November 30, 1990, the defendant paged Green. After speaking with him on the phone, she joined Green and Williams at Green's apartment. She paid Green for two ounces that Green had fronted her and requested more. The defendant, driving her own vehicle, then accompanied Williams and Green to a house in Aurora where drugs were stored. They were followed by undercover police officers who had been surveilling Green's apartment. The defendant, Williams, and Green entered the house, stayed for approximately 20 minutes and departed. While inside, Green gave the defendant 1 or 2 ounces of crack cocaine.
 
 
 5
 The defendant, along with Williams and Green, who were in a separate car, drove to a nearby gas station. The police saw Green hand the defendant a white plastic grocery bag. The police followed the defendant after she left the gas station. After observing her make an illegal turn and an abrupt lane change, the officers decided to stop her car. The defendant ignored the police car's flashing lights and a chase ensued. During the chase, the defendant threw bags out of the driver's side window of her vehicle. The officers retrieved the bags, which were found to contain crack cocaine. The chase ended when the defendant's vehicle collided with a taxi cab and both vehicles were propelled into the front yard of a house.
 
 
 6
 The defendant was arrested. After being taken to the police station, she called Green twice to tell him that she was in jail for the cocaine that he had given her. Thinking that the defendant was cooperating with the police, Green hung up on her.
 
 
 7
 Green stopped fronting the defendant drugs after her arrest. However, Green did date the defendant's close friend, Marla Hunter. On June 21, 1991, the police searched Hunter's apartment. The police found crack cocaine and records of drug transactions. One of the records listed the name "Mouse" and another the name "Mousey." The defendant was known by her nickname "Mouse" and an entry in Hunter's address book read "Sharon-Mousey."
 
 
 8
 The defendant was one of twenty-one individuals indicted in connection with the conspiracy to distribute crack cocaine. She was tried jointly with one of the co-defendants, Thomas Rackstraw, and found guilty of conspiracy to distribute over 50 grams of cocaine base in violation of 21 U.S.C. 841(a)(1)(b)(1), (A)(iii), and 846, and possession with intent to distribute over 5 grams of cocaine base in violation of 21 U.S.C. 841(a)(1) and (b)(1)(B)(iii). In this appeal, she challenges the sufficiency of the evidence on each of the two counts on which she was convicted, the district court's decision to allow the testimony of a probation officer concerning the Sentencing Guidelines,[3] the admission of coconspirator hearsay evidence, and the court's refusal to sever her trial from that of her co-defendant, Rackstraw. The United States has filed a separate appeal challenging the court's denial of an enhancement for obstruction of justice under the Sentencing Guidelines and its decision to depart downward in light of the defendant's criminal history. We affirm.
 
 II. Sufficiency of the Evidence
 
 9
 The defendant asserts that the evidence brought out at trial was insufficient to support her convictions for possession with intent to distribute and conspiracy to distribute cocaine base. In evaluating the sufficiency of the evidence on appeal, we examine the record in the light most favorable to the government to determine if the evidence--both direct and circumstantial, together with all the reasonable inferences to be drawn therefrom--is such that a reasonable jury could find guilt beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Hooks, 780 F.2d 1526, 1529 (10th Cir.), cert. denied, 475 U.S. 1128 (1986). We are bound to accept the assessment of the credibility of witnesses and the resolution of conflicting evidence as found by the trier of fact. United States v. Youngpeter, 986 F.2d 349, 353 (10th Cir.1993). Moreover, "[a] criminal conviction may be sustained on wholly circumstantial evidence." Hooks, 780 F.2d at 1529.
 
 
 10
 We find that there is sufficient evidence on the record to support the defendant's convictions for both possession with intent to distribute and conspiracy. During the chase that eventually led to the defendant's arrest, the police recovered crack cocaine that the defendant had thrown out of the window of her car. The defendant claims that she was not aware that the substance was crack cocaine when she received it and that she had no intent to distribute it. However, Green testified that the defendant contacted him on the night of her arrest in order to obtain more crack cocaine. Green also testified that he was "fronting" the defendant this cocaine under an agreement in which she would pay for the drugs after she had sold them. Green also testified that the defendant admitted in a conversation with Williams that she was "working" or selling drugs. Accordingly, we conclude that the defendant's conviction for possession with intent to distribute is supported by the record.
 
 
 11
 To prove a conspiracy, the government must show that: i) two or more persons agreed to violate the law; ii) the defendant knew at least the essential objectives of the conspiracy; iii) the defendant knowingly and voluntarily became part of the conspiracy; and iv) the alleged coconspirators were interdependent. United States v. Evans, 970 F.2d 663, 668 (10th Cir.1992), cert. denied, 113 S.Ct. 1288 (1993). Green testified at length regarding the defendant's participation in the conspiracy. He testified that the defendant solicited him on more than one occasion to supply her with drugs, that he supplied the defendant with crack cocaine, that he accompanied her on a drug sale, and that she admitted that she was dealing drugs. The defendant would have us discredit this testimony in light of the fact that Green had agreed to testify in exchange for leniency. However, the assessment of credibility and the weight to be afforded the testimony of witnesses are the province of the trier of fact and we refuse to reassess that testimony on appeal. See United States v. McIntyre, 1993 U.S.App. LEXIS 13292, * 49 (10th Cir.1993).
 
 
 12
 There is also significant circumstantial evidence that supports the defendant's conspiracy conviction. She was found to be in possession of a large amount of cash and a beeper, which is consistent with the method of drug dealing described by Green. When the officers attempted to stop the defendant's vehicle, she fled and attempted to dispose of the cocaine in her possession. This cocaine possessed the same unusual consistency as the crack cocaine sold by other members of the conspiracy.
 
 
 13
 In light of the testimony adduced at trial and the physical and circumstantial evidence, we conclude that the record supports the defendant's convictions for possession with intent to distribute and conspiracy to distribute crack cocaine.
 
 
 14
 III. The Hearsay Statements of the Coconspirator
 
 
 15
 The defendant next objects to the district court's decision to admit into evidence a notebook found in Marla Hunter's apartment that contained references to "Mouse" and "Mousey," nicknames of the defendant. She claims that the court admitted the documents under the coconspirator exception to the hearsay rule without making the requisite findings concerning the existence of a conspiracy.[4]
 
 
 16
 We review evidentiary rulings for an abuse of discretion. United States v. Zimmerman, 943 F.2d 1204, 1211 (10th Cir.1991). We review evidentiary rulings by considering the record as a whole. Boren v. Sable, 887 F.2d 1032, 1034 (10th Cir.1989).
 
 
 17
 We find that the defendant failed to properly object to the admission of the documents and accordingly we review the district court's decision to admit the evidence for plain error. Fed.R.Evid. 103(a)(1), (d); McIntyre, 1993 U.S.App. LEXIS at * 12; United States v. Nall, 949 F.2d 301, 309 (10th Cir.1991).[5] Plain errors must be both obvious and substantial. Nall, 949 F.2d at 309.
 
 
 18
 The documents were admitted as "circumstantial evidence that ... a person named 'Mousey' was having some dealings with Marla Hunter." As such, the proof depended not on the truth of the matter asserted on the face of the document, but only on the "circumstance" that the document containing the name "Mousey" was found in Hunter's apartment. The document was introduced because of its existence and where it was found. See McIntyre, 1993 U.S.App. LEXIS at * 19. Consequently, we conclude that the documents were not hearsay as defined by Fed.R.Evid. 801(c). Even if these documents were regarded as hearsay documents, their introduction was harmless given the overwhelming evidence of guilt in this case. Thus, we find that the district court's admission of the evidence did not amount to reversible error.
 
 
 19
 IV. The Refusal to Sever the Defendant's Trial
 
 
 20
 The defendant next contends that the district court erred when it refused to grant a severance of her trial from that of her co-defendant, Rackstraw. As a general rule, we have held that persons charged with conspiracy should be tried together. United States v. Troutman, 814 F.2d 1428, 1447 (10th Cir.1987). "Where the evidence overlaps, the offenses are similar and the operable events occurred within a relatively short span of time, joinder of defendants and offenses is proper." United States v. Esch, 832 F.2d 531, 538 (10th Cir.1987), cert. denied, 485 U.S. 908 (1988).
 
 
 21
 The decision whether to grant a severance is entrusted to the sound discretion of the trial judge under Fed.R.Crim.P. 14 and we review that decision only for an abuse of that discretion. United States v. Cardall, 885 F.2d 656, 667 (10th Cir.1989); Esch, 832 F.2d at 537.[6] To establish that the district court abused its discretion in refusing a severance, the defendant must show that she was actually prejudiced. United States v. Hack, 782 F.2d 862, 870 (10th Cir.) cert. denied, 476 U.S. 1184 (1986). It is insufficient to allege merely that the defendant would have enjoyed a better chance of acquittal if she had been tried separately or that there was some "spill-over" effect from the evidence that was introduced against a co-defendant. Id. at 870. Cardall, 885 F.2d at 668.
 
 
 22
 The requirements of Fed.R.Crim.P. 8(b) were met here, and there is no showing of cognizable, actual prejudice to this defendant from the consolidation of her trial with that of Rackstraw. The court's instructions adequately admonished the jury not to consider evidence of other incidents allegedly involving Rackstraw against the defendant, and, indeed, the jury acquitted the defendant on the count that involved Rackstraw. In the absence of evidence to the contrary, we presume that jurors follow the court's instructions. United States v. Greschner, 802 F.2d 373, 381 (10th Cir.1986) cert. denied, 480 U.S. 908 (1987). We conclude that the district court did not err in refusing to grant a severance.
 
 
 23
 V. The United States' Challenges under the Sentencing Guidelines
 
 
 24
 The United States has filed a separate appeal challenging two of the court's determinations under the United States Sentencing Guidelines. First, the government contends that the district court erred when it refused to enhance the defendant's sentence for obstruction of justice. Second, the government claims that the court erred when it decided to depart downward in light of the defendant's criminal history.
 
 
 25
 We review the district court's factual findings made pursuant to the Sentencing Guidelines for clear error. United States v. Beaulieu, 893 F.2d 1177, 1181-82 (10th Cir.), cert. denied, 497 U.S. 1038 (1990). Accordingly, we will not reverse unless the court's findings have no factual support in the record, or if after reviewing all the evidence we are left with the firm conviction that a mistake has been made. Id. at 1182. As the Supreme Court recently noted:
 
 
 26
 The selection of the appropriate sentence from within the guideline range, as well as the decision to depart from the range in certain circumstances, are decisions that are left solely to the sentencing court. The development of the guideline sentencing regime has not changed our view that, except to the extent specifically directed by statute, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.
 
 
 27
 Williams v. United States, 112 S.Ct. 1112, 1121 (1992) (citations omitted).
 
 
 28
 The government requested a two-point enhancement for obstruction of justice under U.S.S.G. 3C1.1 based on the car chase. The district court found that "the two-level enhancement for reckless endangerment doesn't apply because the defendant's action didn't create a substantial risk of death or serious bodily injury." The government would have us find that the car chase was "inherently dangerous." This we decline to do. The sparse evidence on the record does not convince us that the district court clearly erred. There is no evidence that the chase involved excessive speeds or otherwise presented a substantial risk of death or serious bodily injury. Although the chase ended in an accident, that is not sufficient by itself to require the court to give a two-point enhancement under 3C1.1. Thus, we will not reverse the district court on this issue.
 
 
 29
 The government also objects to the district court's decision to depart downward based on the defendant's criminal history. The court found that
 
 
 30
 the defendant's criminal history is limited to one municipal court violation for discharging a weapon in public and one for a public place [sic] and one misdemeanor conviction for possession of less than one
 
 
 31
 ounce of marijuana. I find that record is substantially less serious than that of most defendants in the same criminal history category of Roman Numeral II. The court will depart downward to category 1, Roman Numeral I, which the court feels is more appropriate to this defendant's criminal history. I believe that that more accurately reflects the seriousness of her past criminal conduct and the likelihood that she would commit further crimes.
 
 
 32
 Sent. Tr. at 30. The government argues that because the prior drug offense concerned "somewhat similar conduct" and because the offense concerning the gun, although a municipal offense, was covered by state law, the district court's downward departure was unwarranted. In light of the court's finding that the defendant's criminal "record is substantially less serious than that of most defendants in the same criminal history category," Sent. Tr. at 30, we are unable to find that the district court committed clear error when it concluded that "the defendant's criminal record over-represents her criminal history," Aplee. Apx. at 8, and decided to depart downward.
 
 VI. Conclusion
 
 33
 For the aforementioned reasons we AFFIRM.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 The Honorable Kathryn H. Vratil, District Judge for the District of Kansas, sitting by designation
 
 
 [3]
 In arguing that the court erroneously allowed the testimony of Officer Merlo concerning the operation of the Sentencing Guidelines, the defendant has adopted the reasoning set out by one of her co-defendants in a related appeal. See United States v. Rackstraw, 10th Cir. No. 92-1122. We reject the defendant's challenges for the same reasons we set out in that case
 
 
 [4]
 Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). A statement is an "oral or written assertion ... of a person, if it is intended by the person as an assertion." Fed.R.Evid. 801(a). Hearsay evidence cannot be admitted unless it falls under an exception. Fed.R.Evid. 802
 The coconspirator exception provides that an out-of-court statement by a coconspirator made "during the course and in furtherance of the conspiracy" is not hearsay. Fed.R.Evid. 801(d)(2)(E).
 
 
 [5]
 The following exchange took place at trial during the prosecution's examination of Green:
 Ms. Feldman: At this time, Your Honor, I would offer Government's Exhibits 13, 14, and 15 subject to connection.
 Mr. Fritsche: Objection.
 The Court: Excuse me?
 Ms. Feldman: 12, 13, and 14.
 Mr. Fritsche: I object to those, Your Honor. I don't know what kind of connection we are talking about, but he has not identified that he has ever seen these particular documents, and he says he can't explain the form that they are in. There is no foundation laid.
 Tr. at 121. The defendant's appellate counsel concedes that a proper objection was not made. App. Br. at 38 and n.37.
 
 
 [6]
 Rule 8(a) of the Federal Rules of Criminal Procedure provides that two or more offenses may be charged in the same indictment "if the offenses charged ... are of the same or similar character or are based on ... two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(b) provides that "[t]wo or more defendants may be charged in the same indictment ... if they are alleged to have participated in the ... same series of acts or transactions" constituting one or more offenses