**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Elbert Glynn GILES, Defendant– Appellant.**

**No. 91–2218.**

United States Court of Appeals, Tenth Circuit.

June 16, 1992.

Charles L. Barth, Asst. U.S. Atty. (Don J. Svet, U.S. Atty., and Judith A. Patton, Asst. U.S. Atty., with him on the brief), Las Cruces, N.M., for plaintiff-appellee.

John B. Leyba, Las Cruces, N.M., for defendant-appellant.

Before BRORBY and EBEL, Circuit Judges, and VAN SICKLE,\* District Judge.

BRORBY, Circuit Judge.

Elbert Glynn Giles appeals his conviction and sentence for using a person under the age of eighteen to engage in sexually explicit conduct and sending photographs depicting a person under the age of eighteen in sexually explicit conduct through the United States mail in violation of 18 U.S.C. § 2251(a) and (d), and 18 U.S.C. § 2252(a)(1) and (b). Specifically, Mr. Giles alleges the trial court erred by failing to suppress certain evidence and by failing to dismiss the indictment because of outrageous government conduct. Mr. Giles also asserts the trial court should have given him a two level downward adjustment for acceptance of responsibility.

## Background

Mr. Giles responded to an advertisement in a "swinger's" magazine aimed at "anyone who is interested in family fun and the training of young girls." Walt Parsons, a detective for the City of Arvada, Colorado, placed the ad to attract pedophiles. Initially, Mr. Giles sent a very forthright letter identifying his interest in sexual activity with children. In fact, in this initial letter Mr. Giles, identified only as "G.G.," stated he was having sexual contact with an eleven-year-old girl even as he wrote the letter.

---

\* The Honorable Bruce M. Van Sickle, Senior District Judge for the District of North Dakota, sitting by designation.

Detective Parsons responded using the name Lew Kreeger and sent Mr. Giles a letter expressing similar interests. The correspondence continued. Mr. Giles sent more graphic letters and requested Detective Parsons to send any pornographic materials he had. Mr. Giles then sent a letter with a detailed account of a sexual encounter he had with a twelve-year-old girl at the flea market. Mr. Giles also sent a list of techniques to seduce young girls. Detective Parsons, after conferring with Postal Inspectors, sent a photograph of a nude boy and girl from a magazine and a videotape entitled "Miss Teenage Nude." Detective Parsons testified he was alarmed by the likelihood a child was being molested and that Mr. Giles was soliciting girls in public places. He sent these materials in the hope of receiving some identification of the victims. In a letter postmarked March 30, 1990, Mr. Giles sent four Polaroid snapshots of a young girl identified as "Gina" in sexually explicit poses.

Detective Parsons contacted a detective dealing with sexual and child abuse investigations in El Paso County, Texas. Based on the return address of the letters and the Polaroid shots, the detective was able to identify the little girl in the photos. The investigation also revealed the young girl's uncle, Mr. Giles, resided at the same address.

United States Postal Service Inspectors obtained a warrant for Mr. Giles' arrest based on the information which the detective uncovered. On April 19, 1991, Mr. Giles was apprehended in his pick-up a few blocks from his residence. Once the officers placed Mr. Giles in custody, a detective sergeant with the El Paso County Sheriff's Department read Mr. Giles his *Miranda*[1] rights. Mr. Giles asked the sergeant if this arrest was in connection with photographs taken of a child and asked when he would be given an opportunity to talk to an attorney. Sergeant Ryals told him he would be taken before a magistrate judge and if he could not afford an attorney to advise the judge so one could be appointed; otherwise he could call his own attorney at that time.

Sergeant Ryals did not ask any further questions of Mr. Giles at that time. Once Mr. Giles arrived at the sheriff's office he was informed of his *Miranda* rights a second time. Inspector Ross obtained a waiver of rights from Mr. Giles. After that, the detectives obtained consent to search his vehicle. Mr. Giles asked what would happen if he refused consent. Inspector Ross indicated Mr. Giles would not be forced to consent but that they would try to obtain a search warrant.

Further questioning revealed Mr. Giles had a storage locker in Anthony, New Mexico. Mr. Giles consented to a search of the locker and gave police the key.

Inspector Ross then asked Mr. Giles if he would like to talk about the contents of the warrant. Mr. Giles agreed and told the Inspector he thought his ex-wife's husband was taking pictures of Mr. Giles' children and selling them. Mr. Giles stated he was trying to obtain those pictures so he could get custody of his children. He then agreed to provide a sworn written statement. Mr. Giles also filled out a standard handwriting form.

At this time, Mr. Giles' sister gave Inspector Wood consent to search her home, where Mr. Giles was staying. The officers seized evidence from a hall closet. Inspector Wood then proceeded to the impound lot and searched Mr. Giles' pick-up truck pursuant to Mr. Giles' consent and an inventory search. The agents seized further evidence from Mr. Giles' truck.

At the suppression hearing, the district court found: the residence was properly searched as a result of valid consent given by Mr. Giles' sister; Mr. Giles voluntarily consented to a search of his vehicle and the storage locker; Mr. Giles was informed and aware of his rights; and Mr. Giles did not indicate he wanted to speak to a lawyer after having been informed of his *Miranda* rights a second time. Consequently, the court denied Mr. Giles' motion to suppress.

At a bench trial, Mr. Giles moved to dismiss based on outrageous conduct of the government. The court found that the

---

1. *Miranda v. Arizona,* 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966).

governmental conduct in this case did not amount to the type of egregious conduct to support such a dismissal under Tenth Circuit and Supreme Court case law. In fact, the court determined that the conduct in this case was "entirely proper in order to ferret out the ... sexual exploitation of children."

Finally, at the sentencing hearing, the district court refused to adjust Mr. Giles' offense level down by two levels for acceptance of responsibility. The court found Mr. Giles' alleged acceptance was not timely as it occurred after he stood trial on the merits of the case.

Mr. Giles appeals both his conviction and sentence. He contends the trial court committed three reversible errors by: (1) denying his pre-trial motion to suppress; (2) denying his pre-trial motion to dismiss based on outrageous government conduct; and (3) failing to accord him a two-level downward adjustment to his offense level for his acceptance of responsibility.

### I. Motion to Suppress

Before trial, Mr. Giles moved to suppress statements and evidence obtained as a result of statements made during his post-arrest custodial interrogation on April 19, 1990. Mr. Giles argued he did not knowingly, intelligently and voluntarily waive his right to remain silent until assistance of counsel. At issue on appeal are Mr. Giles' post-arrest statements that led to a search of his vehicle, a search of a storage locker, a written confession, and handwriting samples.

The district court held a motion hearing on the matter. The district court found Mr. Giles was informed of his *Miranda* rights and questioning ceased when he asked about his right to an attorney. Next, the court found Mr. Giles was re-advised of his rights but did not at any time invoke his right to speak to an attorney. The district court found that Mr. Giles voluntarily consented to a search of his pick-up truck. Furthermore, the vehicle was properly inventoried at the scene as well as the impound lot. The court also found that after Mr. Giles was informed of

his *Miranda* rights a third time, he voluntarily informed the officers about his storage locker and gave them consent to search it. The district court found that Mr. Giles was fully aware of his rights and he knowingly and voluntarily executed his consent to search and waiver of rights.

■ When reviewing a denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous. *United States v. Comosona*, 848 F.2d 1110, 1111 (10th Cir.1988).

The law in the area of custodial interrogations is well settled. The Supreme Court mandates an accused must be informed of his right to have counsel present during questioning. *Miranda*, 384 U.S. at 469–70, 86 S.Ct. at 1625–26. Once an individual invokes his right to an attorney, all questioning by law enforcement officers must cease until an attorney is present. *Id.* at 474, 86 S.Ct. at 1627. "[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). Once the accused has invoked his right to counsel, only the accused may permissibly initiate further interrogation. *Id.* at 484–85, 101 S.Ct. at 1884–85.

The first step in this analysis is to determine whether the accused has invoked his Fifth Amendment right to have counsel present at questioning. *Smith v. Illinois*, 469 U.S. 91, 95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488 (1984). To invoke this right requires, "at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *McNeil v. Wisconsin*, — U.S. —, —, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991).

■ In this case, after being advised of his rights, Mr. Giles asked when he would be given an opportunity to talk to an attor-

ney. Although Mr. Giles did not expressly request an attorney, this statement could be reasonably construed to be such a request. In fact, it is more likely than not that Mr. Giles desired to speak to an attorney and only wondered about the procedure relating to such a request. The district court so found. We do not consider such a finding to be clearly erroneous in light of the circumstances.

■ However, the district court then found that before Mr. Giles was given an opportunity to talk to an attorney he was informed of his *Miranda* rights again and at that time did not invoke his right to an attorney. The court found that Mr. Giles knowingly and voluntarily waived his rights at that time. Under *Edwards*, this finding is clearly erroneous. In *Edwards*, the Supreme Court expressly held that once an accused invokes his right to counsel, all questioning must cease until counsel is furnished, regardless of whether the accused is re-informed of his rights. The only exception to this bright-line rule is where the accused initiates the conversation with the police. The record reveals Mr. Giles did not initiate any conversation with the police once he had invoked his right to an attorney. The evidence obtained was a direct result of the unlawful interrogation by the officers. Consequently, all evidence obtained as a result of Mr. Giles' unlawful interrogation should have been suppressed as fruit of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). This includes his written and oral confession, the contents of the storage locker and the handwriting samples.[2] We reverse Mr. Giles' conviction and remand this case to the district court with directions to grant Mr. Giles' motion to suppress this evidence.

## II. Outrageous Governmental Conduct

Mr. Giles moved to dismiss his Indictment pursuant to Fed.R.Crim.P. 12(b) on the basis of the outrageousness of the government's conduct in this case. Mr. Giles argued that the criminal conduct with which he was charged was instigated and encouraged by Detective Parsons. Mr. Giles contended the officer wrote letters and sent photos and videotapes intended to entice Mr. Giles to commit the very crime with which he was charged. We respond to this assertion of error as it may become pertinent should the United States elect to retry Mr. Giles.

The court found Mr. Giles' conduct was not provoked by the United States Government. Furthermore, the court found that the government's conduct in this case was not so egregious as to warrant a dismissal. The facts of this case, the court found to be "entirely proper in order to ferret out the ... sexual exploitation of children."

■ A motion to dismiss based on an outrageous governmental conduct defense is a question of law which we review de novo. *United States v. Citro,* 842 F.2d 1149, 1152 (9th Cir.). *cert. denied,* 488 U.S. 866, 109 S.Ct. 170, 102 L.Ed.2d 140 (1988).

We have addressed previously a claim of outrageous government conduct in *United States v. Esch,* 832 F.2d 531, 538–39 (10th Cir.1987), *cert. denied,* 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 242 and 485 U.S. 991, 108 S.Ct. 1299, 99 L.Ed.2d 509 (1988),[3] a factually similar case which we conclude is dispositive. In *Esch*, postal inspectors sent membership applications for a fictitious organization to suspected pedophiles. *Id.* at 533–34. Thomas Blackledge became a member and began corresponding with an undercover investigator. *Id.* Blackledge wrote about sexual experiences he had with a couple (defendants) and their two children. *Id.* The investigator suggested that Blackledge purchase a camera to take pictures of these encounters. *Id.* Subsequently, Blackledge sold sexually explicit photos of the couple and their children. *Id.* Defendants claimed the inspec-

---

**2.** The evidence obtained from Mr. Giles' vehicle was seized pursuant to an inventory search. As such, his consent was unnecessary. Therefore, the contents of the vehicle do not need to be suppressed as they were obtained properly.

**3.** For an excellent discussion of the outrageous conduct defense, *see United States v. Mosley,* 965 F.2d 906, 908 (10th Cir.1992).

tor's conduct in carrying out the investigation was so outrageous as to require a reversal of their convictions on due process grounds. *Id.* at 538. They claimed that no evidence demonstrated the photos existed before the government requested them to be taken and, therefore, the operation directly harmed the children in the photos. *Id.*

We held the investigation did not constitute outrageous government conduct because the agents did not provide the instrumentalities of the crime nor induce defendants to engage in activity they were not otherwise disposed to undertake. *Id.* We concluded that the government conduct of encouraging the photos to be taken and forwarding other mail was not outrageous in light of the clandestine nature of the activity under investigation. *Id.* at 538–39. We also concluded it was reasonable for the investigators to assume that the only way to "ferret out suspected pedophiles 'was to encourage the photograph[ing] and mailing of what was otherwise being done or what they thought was being done.'" *Id.* at 539 (citation omitted).

■ In this case, Detective Parsons placed an advertisement in a swingers' magazine. The ad was directed at pedophiles, but Detective Parsons did not specifically contact Mr. Giles. Detective Parsons testified placing this type of advertisement was a law enforcement technique he has utilized dozens of times. Mr. Giles' initial correspondence concerned Detective Parsons because it stated Mr. Giles was having sexual encounters with an eleven-year-old girl while writing the letter. To find out if in fact a child was being abused, Detective Parsons wrote back acknowledging similar interests. Eventually, Detective Parsons sent a nude photo of a small boy and girl in the hopes of receiving some identification of the young girl he feared was being molested. At Mr. Giles' request, Detective Parsons also sent a videotape entitled "Miss Teenage Nude." Detective Parsons testified the video did not depict any sexual acts but some of the girls appeared to be young. Detective Parsons testified he had never, before or since, mailed photographs in the course of an investigation. The purpose in this case for him doing so was the fact the individual was boldly proclaiming he was having sex with several children.

We conclude the government's conduct in this case does not rise to the level of outrageous governmental conduct requiring dismissal of the indictment. Mr. Giles voluntarily responded to an advertisement directed at persons who like sex with young girls.[4] In his initial response he indicated he was having sex with an eleven-year-old girl. The government actions following this admission were undertaken primarily out of concern for the young girl with a focus toward her identification. Mr. Giles specifically requested photos and videotapes and promised photos of the young girl in return. As in *Esch*, Mr. Giles was otherwise disposed to exploit young girls. Hoping for identification of the girl based on the promised photos, Detective Giles sent nude photographs of young children not sexual in nature and a nude videotape.

We conclude the detective's conduct was not so outrageous as to justify a dismissal in light of Mr. Giles' graphic letters detailing sexual encounters with several young children and the secretive nature of the activity being investigated. Finally, we have held it is not improper to suggest the photographing and mailing of illegal activities suspected of taking place. Based on the graphic correspondence sent by Mr. Giles, it was reasonable for Detective Parsons to assume that Mr. Giles was sexually exploiting young girls. Consequently, we hold it was entirely proper for him to encourage Mr. Giles to send photographs of that activity in order to "ferret out" this illegal activity. *Esch*, 832 F.2d at 539.

**4.** We conclude the recent United States Supreme Court case of *Jacobson v. United States,* —— U.S. ——, 112 S.Ct. 1535, 118 L.Ed.2d 147 (1992), is inapposite. First, *Jacobson* is an entrapment case, rather than an outrageous conduct case. Furthermore, in that case the government sent mailings to the defendant over a twenty-six-month period. The Supreme Court held the government did not prove the defendant was predisposed to commit the illegal act rather than acting as a result of the government's mailings.

Accordingly, we affirm the district court's denial of Mr. Giles' motion to dismiss based on outrageous government conduct.

### III. Acceptance of Responsibility

Finally, Mr. Giles complains that the sentencing court misapplied the guidelines to the facts of his case. Mr. Giles contends that the sentencing court erred by finding as a matter of law that he was not entitled to a two-point reduction to his base offense level for acceptance of responsibility because he stood trial. In light of the fact that we have reversed Mr. Giles' conviction, we need not reach the sentencing issues.

### Conclusion

We REVERSE Mr. Giles' conviction and REMAND the matter to the district court with instructions to set aside the conviction, grant the motion to suppress, and grant a new trial. We AFFIRM the district court's denial of the motion to dismiss for outrageous government conduct. We decline to reach the sentencing question as Mr. Giles' conviction has been reversed.