17 F.3d 1437
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Steven G. NUSZ, Defendant-Appellant.
 No. 93-3029.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 18, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before EBEL and KELLY, Circuit Judges, and COOK, Senior District Judge.[2]
 
 
 2
 Defendant-Appellant, Steven G. Nusz ["Nusz"], appeals from his convictions for carrying a firearm during a drug trafficking offense and possession of a machinegun, violations of 18 U.S.C. 924(c)(1) and 922(o) respectively. The defendant claims that the government's conduct in this case was so outrageous that his prosecution was a violation of due process of law. In addition, he claims that the district court's failure to give an entrapment defense for the possession of a machinegun count was prejudicial error.
 
 
 3
 The Wichita police began developing a friend of Nusz as an informant in a firearms and narcotics investigation in July 1991. On September 3, 1991, the police and the informant set up a meeting with Nusz. The police told Nusz that they were setting up a marijuana transaction, and they discussed firearms transactions with him.
 
 
 4
 The next night, September 4, the police and agents of the Bureau of Alcohol, Tobacco, and Firearms ["ATF"] again met with Nusz. The government and Nusz dispute whether the parties discussed a marijuana transaction at that meeting. However, Nusz does not refute the fact that he sold the officers a sawed-off shotgun and showed them a M-1 carbine which Nusz said had been converted to fire as a select-fire machinegun. This weapon allegedly needed only one part to be operational, and Nusz possessed that part. The ATF fired the machinegun with Nusz on September 5.
 
 
 5
 On September 7, the police showed Nusz marijuana that was available for purchase. The parties agreed to conduct a drug transaction on September 9. The informant advised Nusz to bring "insurance," i.e. a firearm, to the drug deal.
 
 
 6
 Nusz was arrested on September 9 when he and a co-defendant purchased marijuana from the police. Nusz was armed with a 10 mm pistol at the time. The police also seized the machinegun from his home under a search warrant.
 
 
 7
 Nusz alleges that he lacked the intent to engage in drug transactions until the last minute, and only after pressure by the police and the informant. The police informant allegedly questioned Nusz daily about engaging in drug activities. Nusz alleges that he told the informant that he did not engage in drug activities. He alleges that he had dealt drugs five years prior to the events in question, but had kept clean since.
 
 
 8
 Nusz was indicted on the charges of carrying a firearm during a drug trafficking offense and possession of a machinegun. Nusz moved to dismiss on the grounds that the government's conduct had been so outrageous that his prosecution violated due process. In the alternative, he asked for entrapment instructions on both counts. The district court found that the government's conduct was not outrageous and only instructed the jury on the entrapment defense for the count involving the carrying a firearm during a drug transaction. The jury found Nusz guilty on both counts. The district court subsequently denied motions Nusz filed for acquittal or a new trial based on the failure to instruct. Nusz appeals from the district court's finding of no outrageous government conduct and its refusal to instruct the jury on an entrapment defense for the possession of a machinegun count.
 
 I. Outrageous Government Conduct
 
 9
 We review de novo whether government conduct is so outrageous as to cause a due process violation as a matter of law. United States v. Mosley, 965 F.2d 906, 909-10 (10th Cir.1992); United States v. Giles, 967 F.2d 382, 386 (10th Cir.1992). Government conduct may, in extremely limited circumstances, be "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction...." Mosley, 965 F.2d at 909 (quoting United States v. Russell, 411 U.S. 423 (1973)). This defense is available "for only the most egregious circumstances" that shock "the universal sense of justice." Id. Two factors are relevant to analyze government conduct in this Circuit: 1) whether the government engineered and directed the criminal enterprise from start to finish; and/or 2) whether the government's means of influencing a defendant to participate in a transaction were coercive to the point of being outrageous. Mosley, 965 F.2d at 911-12. We have held that the government can sell narcotics as part of undercover operations, "front" drugs to defendants, apply some persuasion on the suspect, and substantially participate in a criminal transaction when necessary to "ferret out" clandestine criminal activity. Giles, 967 F.2d at 386; United States v. Clonts, 966 F.2d 1366, 1369 (10th Cir.1992); United States v. Harris, 997 F.2d 812, 817 (10th Cir.1993); Mosley, 965 F.2d at 912. The government can employ artifice or deception and even utilize threats or intimidation, within limits appropriate to the "cover." Mosley, 965 F.2d at 912. This Circuit has not found a case in which the government was so outrageous that prosecution of a defendant was a violation of due process.
 
 
 10
 We find, and the defendant can point to, no facts in this case which make government conduct more outrageous than that in the previous decisions cited above in which this Court has found no outrageous government conduct. See, e.g., Id. (no outrageous conduct where the government convinced defendant to buy cocaine instead of marijuana, convinced him to buy eight ounces instead of four, offered an allegedly low price, and "fronted" much of the cocaine). There is some evidence to suggest that the defendant was approached by the government to commit drug violations, and that the government may have kept urging that the defendant engage in a transaction. In addition, the police may have offered and smoked marijuana cigarettes during one of the meetings. However, even assuming all this, the government's conduct does not fit into the extremely narrow class of cases to which the outrageous government conduct defense applies.
 
 II. Entrapment Instruction
 
 11
 The failure of the district judge to give an entrapment instruction to the jury on the possession of a machinegun charge was not prejudicial error.[3] Criminal defendants are entitled to an instruction on a theory of defense if the evidence and the law support such an instruction. United States v. Ortiz, 804 F.2d 1161, 1163 (10th Cir.1986). Failure to allow a defendant to present a theory of defense supported by evidence is reversible error. Id. at 1164. The main question on review, then, is whether a defendant has created a factual question of entrapment. United States v. Sullivan, 919 F.2d 1403, 1418 (10th Cir.1990), cert. denied, 113 S.Ct. 285 (1992). The entrapment defense has two elements: "First, government agents must have induced the defendant to commit the offense; and second, the defendant must not have been otherwise predisposed to commit the offense, given the opportunity." Id. Thus, if a defendant points to evidence of inducement and lack of predisposition, he or she is entitled to an entrapment instruction, and the prosecution should bear the burden of proving predisposition beyond a reasonable doubt. Id. at 1418 & n. 18; Jacobson v. United States, 112 S.Ct. 1535, 1540 (1992). Whether there is sufficient evidence is a question of law and is reviewed de novo by this court. Ortiz, 804 F.2d at 1164.
 
 
 12
 Based on the facts of this case, the defendant was not entitled to an entrapment instruction on the possession of a machinegun count, since he possessed a "machinegun" within the meaning of the statute before the government became involved. The defendant had the M-1 carbine and a conversion kit for full automatic fire before the federal agents and police were involved in this case.[4] This counts as a machinegun under 26 U.S.C. 5845(b). Thus, because the defendant had committed the crime of possession before the government became involved, there is no way in which he could have been entrapped. The defendant's possession of the M-1 and conversion kit dispel both the notion that he was coerced and that he was not predisposed towards the possession crime. Because there is no evidence that Nusz was induced into committing the crime or lacked predisposition to commit it, he was not entitled to an entrapment instruction.
 
 
 13
 The district court's judgment is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Honorable H. Dale Cook of the Northern District of Oklahoma, sitting by designation
 
 
 [3]
 Possession of a machinegun is a violation of 18 U.S.C. 922(o). "Machinegun" is defined in the Internal Revenue Code, 26 U.S.C. 5845 as follows:
 The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.
 
 
 [4]
 Indeed there is testimony that the M-1 was already converted to automatic fire when the government became involved. Record on Appeal at 505