**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 16 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOSEPH DELANEY WRIGHT,

Petitioner - Appellant,

v.

RON CHAMPION,

Respondent - Appellee.

No. 99-6128
(D. Ct. No. 97-CV-537-C)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **TACHA** , **McKAY** , and **MURPHY** , Circuit Judges.

After examining the briefs and the appellate record, this three-judge panel

has determined unanimously that oral argument would not be of material

assistance in the determination of this appeal.      See Fed. R. App. P. 34(a)(2); 10th

Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Petitioner Joseph Delaney Wright    , an Oklahoma state prisoner proceeding

pro se, appeals from the district court's order denying his petition for a writ of

habeas corpus, filed in accordance with 28 U.S.C. § 2254.  Mr. Wright filed,

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

before the district court, a motion for leave to proceed on appeal in forma pauperis and an application for certificate of appealability ("COA"). The district court denied both motions. Mr. Wright has renewed both requests before this court.

## I.

On February 18, 1994, a jury in the District Court of Oklahoma County convicted petitioner of Robbery in the First Degree After Former Conviction of Two or More Felonies and Maiming After Former Conviction of Two or More Felonies. Petitioner was sentenced to sixty and seventy years imprisonment, respectively, to be served concurrently. The Oklahoma Court of Criminal Appeals summarily affirmed his convictions and sentences on September 26, 1995. On April 10, 1997, Mr. Wright filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Oklahoma, asserting five grounds for relief that he had also raised on direct appeal. He claimed: (1) the trial court erroneously admitted Mr. Wright's video-taped confession allegedly obtained in violation of his Fifth Amendment right to counsel; (2) the trial court allowed a tainted in-court identification of the petitioner in violation of his due process rights; (3) petitioner's convictions violated the Double Jeopardy Clause because they were part of a single criminal episode; (4) the trial court erred in admitting prior "mug shots" of Mr. Wright during the sentencing phase of his

trial; and (5) there was insufficient evidence to support petitioner's maiming conviction. The district court referred the matter to a magistrate judge, who recommended denial of Mr. Wright's habeas petition on the merits. On December 31, 1998, the district court adopted the magistrate's Report and Recommendation in its entirety and denied Mr. Wright's habeas petition. On appeal, petitioner raises the same arguments presented to the district court, asserting that the district court erred in denying habeas relief. Because this matter is before us on petitioner's request for a COA, we review his claims to determine whether he has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c).

## II.

### A. Right to Counsel

Petitioner claims the trial court erred in admitting his video-taped confession because it was allegedly obtained in violation of his Fifth Amendment right to counsel. In Miranda v. Arizona, the Supreme Court held that the Fifth and Fourteenth Amendments guarantee individuals the right to have counsel present during custodial interrogation. See 384 U.S. 436, 479 (1966). "[O]nce an accused invokes his right to counsel, all questioning must cease until counsel is furnished, regardless of whether the accused is re-informed of his [ Miranda ] rights. The only exception to this bright-line rule is where the accused initiates

- 3 -

the conversation with the police." United States v. Giles, 967 F.2d 382, 386 (10th Cir. 1992); accord Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).

After being informed of his Miranda rights, petitioner unequivocally invoked his right to counsel by stating, "I've got to talk to a lawyer, man." At that point, the police detective ceased questioning Mr. Wright regarding the crime and informed him that the police could not talk to him if he wanted a lawyer. However, before arrangements for counsel could be made, petitioner initiated a further conversation with the police by asking, "What do you want to know?" Further questioning ensued, leading to petitioner's confession.

We agree with the magistrate that, under the circumstances of this case, by initiating further conversation with the police, petitioner knowingly and voluntarily waived his right to counsel. Cf. United States v. Obregon, 748 F.2d 1371, 1380-81 (10th Cir. 1984) (finding no Fifth Amendment violation when accused initiated further communications with the police after invoking right to counsel). Therefore, petitioner's Fifth Amendment claim is without merit.

## B. Tainted In-Court Identification

Petitioner also argues that the trial court violated his due process rights by admitting an in-court identification tainted by a pretrial confrontation. Petitioner was brought to the victim's hospital room shortly after his apprehension. The admission of in-court identification testimony offends the Due Process Clause

only when, under the totality of the circumstances, it was tainted by suggestive pre-trial identification procedures in such a manner as to create a "very substantial likelihood of misidentification." United States v. Smith, 156 F.3d 1046, 1051 (10th Cir. 1998), cert. denied, 119 S. Ct. 844 (1999). In Neil v. Biggers, 409 U.S. 188, 199-200 (1972), the Supreme Court set forth five factors to consider in evaluating the likelihood of misidentification. Those factors include:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Id. at 199-200. The Neil factors "must be weighed against the corruptive effect of a suggestive pre-trial identification procedure to determine whether the identification testimony should have been suppressed." Grubbs v. Hannigan, 982 F.2d 1483, 1490 (10th Cir. 1993).

Applying the Neil factors to the facts of this case, we agree with the magistrate that the victim's identification of the petitioner as her assailant was not rendered unreliable by the pretrial confrontation. Although the victim was not able to view her assailant while she was attacked, as she fled from the scene, she got a good look at him while he attempted to unlock her car. The victim testified that her attention was focused on the attacker because she wanted to make sure he

- 5 -

left the scene. The victim gave police relatively accurate, detailed, and consistent descriptions of her attacker. Finally, the witness testified that at the time of her confrontation, which occurred less than two hours after the attack, she was certain that the petitioner was her assailant. We therefore conclude that the admission of the victim's in-court identification of petitioner as her assailant did not violate his due process rights.

## C. Double Jeopardy

Mr. Wright further argues that his conviction for both first degree robbery and maiming violates the Double Jeopardy Clause of the Fifth Amendment, as applied to the states through the Fourteenth Amendment. The Double Jeopardy clause "protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989). "This protection, however, is limited to 'ensur[ing] that the sentencing discretion of courts is confined to the limits established by the legislature,' for it is the legislature that is vested with 'the substantive power to prescribe crimes and determine punishments.'" Cummings v. Evans, 161 F.3d 610, 614 (10th Cir. 1998) (quoting Ohio v. Johnson, 467 U.S. 493, 499 (1984)), cert. denied, 119 S. Ct. 1360 (1999). "Thus, when a course of criminal conduct constitutes a violation of two statutory provisions, the test to determine whether the punishments are 'multiple,' in violation of the Double

Jeopardy Clause, is 'essentially one of legislative intent.'" Id. (quoting Johnson,
467 U.S. at 499). Mr. Wright claims that Oklahoma's statutory double jeopardy
provision, Okla. Stat. Ann. tit. 21, § 11, [1] is indicative of Oklahoma's intent not to
separately punish the crimes of first degree robbery and maiming when they are
part of the same criminal episode. We disagree.

In Cummings v. Evans, this court held that "§ 11 does not apply when a
person commits non-essential and gratuitous criminal acts in the course of
accomplishing another crime, even if the intervening crimes assist the person in
consummating the final criminal act." 161 F.3d at 616. Petitioner's actions in
maiming his victim during the course of the robbery were certainly gratuitous
criminal acts. Cf. id. (holding that the stabbing of a victim in the course of a
robbery was "an act of gratuitous violence separate from the robbery"). As noted
by the magistrate, not only was it unnecessary for petitioner to repeatedly shove
his victim's face into the pavement to consummate the robbery, such actions
actually hindered the victim from complying with petitioner's demand to

_____

[1] Okla Stat. Ann. tit. 21, § 11(A) states:

an act or omission which is made punishable in different ways by
different provisions of this code may be punished under either of
such provisions, . . . but in no case can it be punished under more
than one; and an acquittal or conviction and sentence under either
one, bars the prosecution for the same act or omission under any
other.

relinquish her keys.  Consequently, we find that petitioner's double jeopardy claim is without merit.

## D.  Admission of Photographs

Petitioner next argues that the trial court erred in admitting prior "mug shots" of him during the sentencing stage of his trial in violation of the Due Process Clause.  "In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'"     Meas v. Thomas  , 46 F.3d 979, 987 (10th Cir. 1995) (quoting   Tapia v. Tansy  , 926 F.2d 1554, 1557 (10th Cir. 1991)).  "[W]e approach the fundamental fairness analysis with 'considerable self-restraint.'" Jackson v. Shanks  , 143 F.3d 1313, 1322 (10th Cir.) (quoting      United States v. Rivera , 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)),      cert. denied  , 119 S. Ct. 378 (1998).  A proceeding is fundamentally unfair under the Due Process Clause only if it is "'shocking to the universal sense of justice.'"       United States v. Tome   , 3 F.3d 342, 353 (10th Cir. 1993) (quoting      United States v. Russell   , 411 U.S. 423, 432 (1973) (internal quotation omitted)).

Because the state sought to enhance petitioner's punishment for his convictions pursuant to    Oklahoma's Habitual Criminal Act, Okla. Stat. Ann. tit. 21, § 51, it had the burden, at sentencing, to prove petitioner's prior convictions.

The mug shots were probative of petitioner's identity with respect to the prior convictions and constitute a condoned means of proving this fact under Oklahoma law. See Battenfield v. State, 826 P.2d 612, 614 (Okla. Crim. App. 1991) (stating that "prosecutors should do more than simply introduce a Judgment and Sentence to prove a prior conviction" and approving the use of "photographic evidence of the defendant in the prior case" as a means of establishing identity). The admission of the photographs under these circumstances did not render the proceedings against petitioner fundamentally unfair. Thus, the admission of the mug shots did not violate petitioner's due process rights.

**E. Sufficiency of the Evidence**

Finally, petitioner claims that there was insufficient evidence to support his conviction for maiming. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Specifically, Mr. Wright claims that the injuries sustained by his victim were insufficient to support the maiming conviction. Under Oklahoma law, an essential element of the offense of Maiming is that the victim sustained an "injury which disfigures his personal appearance or disables any member or organ of his body or seriously diminishes his physical vigor." Okla. Stat. Ann. tit. 21, §

751.[2] "To constitute maiming by disfigurement, the injury must be such as is calculated, after healing, to attract observation.  A disfigurement which can only be discovered by close inspection does not constitute maiming."  Ketterman v. State , 708 P.2d 1134, 1135 (Okla. Crim. App. 1985).

The test for a sufficiency of the evidence claim on federal habeas review is "whether, after viewing the evidence in the light most favorable to the prosecution,  *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia , 443 U.S. 307, 319 (1979).  "Such review is 'sharply limited' and a court 'faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  Id. at 1013 (10th Cir. 1996) (quoting  Wright v. West , 505 U.S. 277, 296-97 (1992)).  "The Court may not weigh conflicting evidence nor consider the credibility of witnesses.  Rather, the Court must 'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'"  Messer , 74 F.3d at 1013 (quoting Grubbs v. Hannigan , 982 F.2d 1483, 1487 (10th Cir. 1993)).

---

[2] Oklahoma defines the offense of Maiming as:  "Every person who, with premeditated design to injure another, inflicts upon his person any injury which disfigures his personal appearance or disables any member or organ of his body or seriously diminishes his physical vigor, is guilty of maiming."  Okla. Stat. Ann. tit. 21, § 751.

We agree with the magistrate that the evidence, viewed in the light most favorable to the government, supports petitioner's maiming conviction. The victim in this case suffered a cut on, nerve damage to, and broken bones in her face. Following recovery, those injuries have left the victim's nose crooked (causing sinus infections), one side of her face further inset than the other, a scar on the bridge of her nose, and her left eye displaced. Moreover, the attack aggravated an injury to the victim's back which has rendered her unable to clean her house without pain and unable to play certain sports. The jury had the opportunity to hear the victim's testimony as to the extent of her injuries and observe her alleged disfigurements. Under these circumstances, a reasonable juror could have concluded that the victim's injuries were sufficient to constitute maiming.

## Conclusion

For the reasons discussed above, we conclude that Mr. Wright has failed to make a "substantial showing of the denial of a constitutional right," as required under 28 U.S.C. § 2253(c). Accordingly, we deny his application for a COA. We also deny Mr. Wright's motion for leave to proceed in forma pauperis. This appeal is DISMISSED.

ENTERED FOR THE COURT,

Deanell Reece Tacha
Circuit Judge